**LUDTKE et ux. v. WILSON. (No. 586.)**

(Court of Civil Appeals of Texas. Beaumont.
May 17, 1920. Rehearing Denied
June 9, 1920.)

1. **Adverse possession** ⊛➙114(2)—**Description of land by party claiming adversely sufficient to sustain verdict.**

In trespass to try title, evidence for defendant describing land occupied adversely *held* sufficiently definite to sustain a verdict in his favor.

2. **Adverse possession** ⊛➙98—**Naked possession not extended by construction beyond actual occupancy.**

When naked possession alone is relied on as constituting title to land, there must be an actual occupancy of the land, and the possession cannot be extended by construction beyond the actual occupancy.

3. **Witnesses** ⊛➙37(6)—**Witness competent to testify as to boundary line.**

Where a witness testified that he had known the location of the boundary line between several lots all his life, that there were marked trees there recognized as being on the dividing line, and that he was present when a survey of certain property was made and the line between the lots was marked, the court erred in not permitting him to testify as to the location of such line in regard to certain improvements.

Error from District Court, Harris County; J. D. Harvey, Judge.

Action by H. T. D. Wilson against W. F. Ludtke and wife. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Pritchett Harvey and F. L. Jones, both of Houston, for plaintiffs in error.

Harry Holmes and Louis, Campbell & Nicholson, all of Houston, for defendant in error.

WALKER, J. In our discussion of this case, we will speak of plaintiffs in error as appellants and the defendant in error as appellee. This action was in trespass to try title, brought by the appellee, H. T. D. Wilson, against the appellants, W. F. Ludtke and wife, and involves the south half of block 12 of the Royal addition to the city of Houston, Harris county, Tex. Block 12 is in the southwest corner of the Royal addition and is a part of lot 8, and on the south boundary line of lot 8 of the original subdivision of the Harris and Wilson two-league grant. The case was tried to a jury, and on conclusion of the evidence a verdict was instructed for the appellee.

[1] Many years ago this Harris and Wilson grant was subdivided into several lots, the upper tier including lots 7 and 8 and the lower tier including lots 14, 15, 16, and 17. Lot 8 contained about 250 acres, and lots 15 and 16, as shown by a pencil sketch made a part of this record, lie immediately south of lot 8 and contain about 40 or 50 acres each. The north boundary line of lots 15 and 16 is the south boundary line of lot 8, the northeast corner of 15 being the southeast corner of 8 and the northwest corner of 16 being the southwest corner of 8. About 1854 August Ludtke, the father of appellant, acquired a claim to a portion of lot 15. In a partition he was awarded about 26 acres off the west side of this lot, extending from the Buffalo bayou, which was the south boundary line, to the north boundary line, which was the south boundary line of lot 8. Old man Ludtke built his improvements on the south end of his tract and raised his family there. The appellant was born on lot 15 and has lived practically all his life on this lot. About 1887 or 1888 old man Ludtke promised to give his two boys, the appellant and Pete, 30 acres of land off the north end of lot 15. The land was not surveyed, but the father and the boys stepped it off, marking one corner. The boys improved this land, thinking they were on lot 15, built houses and stockpens, and cleared up about 5 acres. Years afterwards appellant bought the north half of block 12, as described in appellee's petition, from a man named Bettis, and moved from his 5-acre improvements to the north half of block 12. According to the testimony of appellant, his 5-acre improvements extended beyond lot 15 and onto the southeast corner of the land in controversy. Appellant described his inclosure on lot 12 as being about the size of three city lots, 50 feet wide and 100 feet long, lying on the south boundary line and extending north. On cross-examination he said, emphatically, that he did not know where the dividing line between lot 8 and lot 15 was; that he did not know the exact location of the south boundary line of lot 12, nor the exact location of the east line of lot 12, but, taking his testimony as a whole, we believe that this issue was fairly raised. He had lived there all his life. He had bought the north half from Bettis, and was living on it. Bettis had the lot under fence at one time. Appellee had had trouble with Bettis in establishing the line between his claim to the south half and Bettis' claim to the north half. Appellee introduced a blueprint map of lots 15 and 16, and this map shows that Ludtke's fence on lot 15 extended into lot 8. Appellant further testified that he had had this corner of lot 12 under fence for about 30 years, and that his fence was still there. If appellant's improvements extended on to the southeast corner of lot 12, his description is sufficiently definite to sustain a verdict of

⊛➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the jury. The issue raised by his testimony as to this encroachment should have gone to the jury.

By their third assignment, appellants complain of the refusal of the court to submit to the jury the following charge:

"Gentlemen of the Jury: If you believe from a preponderance of the evidence that the defendants and those under whom they claim had ten years' peaceable and adverse possession (as those terms are hereinbefore defined) prior to August 18, 1910, of any part of the south end of lot No. 8 of subdivision of Harris and Wilson two-league grant of land in Harris county, Tex., cultivating, using, or enjoying the same, then the defendants would be entitled to hold not to exceed 160 acres of land, including their improvements, and if you so find, you will find for the defendants," etc.

[2] This assignment is overruled. Appellants cannot recover beyond their actual inclosures on lot 8. The testimony of appellant brings his claim clearly within the rule announced in Bracken v. Jones, 63 Tex. 184, he said:

"At the time my father gave us this land, he was claiming it as his, as a part of the property which he owned in that vicinity. He was claiming it under the deed he had from old man Haley, and he claimed it to be a part of lot 15, I think, and we thought it was a part of lot 15 when we went out there. Our father thought he was giving us a part of the land he bought from Haley. My father bought from Haley the south half of lot 15. He left the north half out. Later on Wilson sued my father for a partition of lot 15, in which suit we were supposed to get the west half, and that was because in the deed from Haley to my father he conveyed him an undivided one-half interest in lot 15, and at the time our father conveyed the land to us he was living on the west half of it. He was living on the 26-acre tract known as the Ludtke homestead tract. My father did not assert claim to any part of the land until he bought it from Haley. When he bought from Haley he moved over on to that and half of 82 acres is what he claimed, but in the suit 26 acres was awarded to him."

[3] The court erred in excluding the testimony of J. M. Ludtke as to the location of the dividing line between lots 15 and 16 and lot 8. He testified that he had known the location of this line all his life; that there were marked trees there recognized as being on the dividing line. He further testified that he was present when his father's west half of lot 15 was surveyed out, and the line between 15 and 8 was marked. The record shows lot 12 was on the south boundary line of lot 8. If permitted by the court, the witness would have testified that the improvements of W. F. Ludtke extended from lot 15 on to lot 8, and that W. F. Ludtke lived on block 12 of the Royal addition on the south end of lot 8.

For the errors discussed, this cause is reversed and remanded for a new trial.